ST. JOHNS VEIN CENTER, INC.,
a Florida C-Corporation,

               Plaintiff,

v.                                          Case No. 3:17-cv-892-J-34PDB

STREAMLINEMD LLC, an Ohio limited
liability company, SEAN M. MULLEN,
an individual, HARRY G. CURLEY, an individual,
and CVDJBA, LLC, an Arizona limited liability
company,

               Defendants.
_____/

## <u>ORDER</u>

**THIS CAUSE** is before the Court on the Motion to Dismiss (Doc. 41, StreamlineMD Motion), filed on November 17, 2017, by Defendants StreamlineMD LLC, Sean M. Mullen, and Harry C. Curley (collectively the "StreamlineMD Defendants"). There, the StreamlineMD Defendants assert that several claims alleged by the Plaintiff, St. Johns Vein Center, Inc., (SJVC), in its Second Amended Complaint, <u>see</u> Doc. 27, Second Amended Complaint for Damages and Injunctive Relief (SA Complaint), filed October 18, 2017, should be dismissed for failure to state a claim upon which relief can be granted. <u>See</u> StreamlineMD Motion at 3. Also before the Court is Defendant CVDJBA, LLC's Motion to Dismiss (Doc. 42, CVDJBA Motion), filed on November 17, 2017, in which CVDJBA seeks dismissal of Count IV of the SA Complaint for lack of personal jurisdiction as well as for failure to state a claim upon which relief can be granted. <u>See</u> CVDJBA Motion at 8. Plaintiff opposes both motions. <u>See</u> St. Johns Vein Center, Inc.'s Response

and Memorandum in Opposition to Defendants' Motion to Dismiss (Doc. 46, SJVC Response to StreamlineMD), and St. Johns Vein Center, Inc.'s Response and Memorandum of Law in Opposition to CVDJBA's Motion to Dismiss (Doc. 47, SJVC Response to CVDJBA), both filed December 15, 2017. With leave of Court, CVDJBA, LLC filed a reply to SJVC's Response to CVDJBA. See Defendant CVDJBA, LLC's Reply Memorandum in Support of Dispositive Motion to Dismiss (Doc. 51, CVDJBA's Reply), filed January 5, 2018. Accordingly, this matter is ripe for review.

## I.    STANDARD OF REVIEW

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, n 1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Omar ex. rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing

Twombly, 550 U.S. at 556).  The "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citations omitted); see also BellSouth Telecomm., 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (citations and quotations omitted).  Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth."  See Iqbal, 556 U.S. at 679.  Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. at 678 (quoting Twombly, 550 U.S. at 570).

Additionally, in considering a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Federal Rule of Civil Procedure (Rule(s)), the "plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."  See United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009).  Where a defendant "challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'"  See id. (quoting Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002)).  In ruling on a motion to dismiss for lack of personal jurisdiction, a district court has discretion to conduct an evidentiary hearing.  See Delong Equip. Co. v. Wash. Mills Abrasive Co., 840 F.2d 843, 845 (11th Cir. 1988).  However, where the court

does not conduct a hearing, "the plaintiff must present only a prima facie showing of . . . personal jurisdiction." Id.

A plaintiff makes a prima facie showing by presenting evidence sufficient to withstand a motion for directed verdict on the issue of personal jurisdiction. Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988). Thus, "[t]he district court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits[,]" and "where the evidence presented by the parties' affidavits . . . conflicts, the court must construe all reasonable inferences in favor of the non-movant plaintiff." Id. (citing Delong Equip. Co., 840 F.2d at 845); see also United Techs. Corp., 556 F.3d at 1274 (citing Polski Linie Oceaniczne v. Seasafe Transp. A/S, 795 F.2d 968, 972 (11th Cir. 1986)) (noting that, if the defendant rebuts the jurisdictional allegations in the plaintiff's complaint, "the plaintiff is required to substantiate [its] jurisdictional allegations [ ] by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint."). This construction in favor of the plaintiff is particularly necessary where, as in the instant case, the jurisdictional questions are intertwined with the merits of a case. See Delong Equip. Co., 840 F.2d at 845.

In accordance with this legal framework, the Court will summarize the facts alleged in the SJVC's SA Complaint, along with the relevant competing evidence put forth by CVDJBA as to the question of personal jurisdiction, all the while construing the alleged facts and evidence in favor of the non-moving plaintiff. Morris, 843 F.2d at 492.[1]

---

[1] In support of CVDJBA's argument that Count IV should be dismissed for lack of personal jurisdiction, CVDJBA included with its Motion a Declaration by James A. Heinz, president and CEO of CVDJBA. See Doc. 42-1 (Heinz Declaration). The Heinz Declaration is accompanied by a variety of supporting exhibits. See id. at Doc. 42-2- to 17. In response, SJVC attached to its Response to CVDJBA, an affidavit and declaration of Dr. James St. George, CEO of SJVC. See Doc. 47-1 (St. George Declaration).

## II.     BACKGROUND[2]

This controversy arises out of negotiations between the parties to this action to enter into a business venture that was never fully actualized.  Plaintiff, SJVC, asserts that in the course of the parties' negotiations for the new business venture, Defendants, by virtue of a computer information management system, unlawfully gained access to SJVC's trade secrets, and ultimately used that protected information to exclude SJVC from the venture, and to compete against it.

SJVC is a Florida corporation with its principal place of business in Jacksonville, FL.  SA Complaint at ¶ 1.  Its business focuses on "diagnosing and treating vein conditions" and it is "one of only six Intersocietal Accreditation Commission-accredited vein centers in the State of Florida, and the only one in Northeast Florida for superficial venous evaluation and treatment."  Id. at ¶ 10 -11.  In June of 2011, SJVC entered into a Service Agreement with StreamlineMD, an Ohio corporation that "offers cloud-based, clinical workflow and revenue cycle management technology and services tailored to meet the specific needs of" medical specialists like SJVC.  Id. at ¶¶ 2, 12, 14.[3]  More specifically, StreamlineMD "provides physicians with a license to use its cloud-based integrated software platform to upload a physician's financial and performance data, which the physician can then use to generate reports and other documents on practice

---

[2]Any facts recited here are drawn from SJVC's SA Complaint along with CVDJBA's and SJVC's associated declarations and evidence in regard to the question of personal jurisdiction. However, these facts may well differ from those that ultimately can be proved.

[3] The parties have filed, under seal, an unredacted copy of the Service Agreement.  See Doc. 54 (Service Agreement), filed April 13, 2018.  Given that the document has been filed under seal with the Court, the Court will not directly quote from it.  However, to the extent that the parties rely on or refer to the Service Agreement's terms and conditions, the Court will note when it agrees or disagrees with how the parties construe the Service Agreement and its effect.  Likewise, when necessary, the Court will generically describe the Service Agreement's content.

management, revenue cycle management, and billing in order to enhance his or her practice." Id. at ¶ 13.

Pursuant to the terms of the Service Agreement between SJVC and StreamlineMD, SJVC paid StreamlineMD a recurring fee for "a license to use Streamline MD's software and access StreamlineMD's database and information management systems." Id. at ¶ 14. SJVC used StreamlineMD's system for all aspects of its practice, except for patient billing. Id. at ¶ 16. Thus SJVC "used the software and services to generate reports containing significant confidential data and trade secret information belonging to [SJVC], including without limitation, the following: confidential patient information, procedures per month, finances (including reimbursement), insurance payment schedules, and patient demographics (collectively, the 'Protected Information.')." Id. The Service Agreement also granted StreamlineMD a license to "use only a few specific types of [SJVC's] data housed within StreamlineMD's software: aggregate, de-identified portions of [SJVC's] data for use only in the design, evaluation and operation of StreamlineMD's services, research, development and marketing . . . ." Id. at ¶ 17. However, as alleged by SJVC, nothing within the Service Agreement "afforded StreamlineMD, Mullen [as President of StreamlineMD], Curley [as CEO of StreamlineMD], or any other StreamlineMD employee authorization to access Plaintiff's Protected Information." Id. Nonetheless, SJVC asserts that "Mullen and Curley directly (or indirectly, through other StreamlineMD employees) accessed the Protected Information, reviewed it, and used it for their own personal benefit." Id. at ¶ 18.

SJVC alleges that between mid-2015 and into 2016, Mullen and Curley, and James A. Heinz, President/CEO of CVDJBA, an Arizona company,[4] met and corresponded with Dr. James St. George, CEO of SJVC, on multiple occasions to discuss and promote a merger of SJVC with similar medical practices from other states. Id. at ¶¶ 19-21, 24, 26, 31, 35, 36, 41. In October 2015, the parties executed a Memorandum of Understanding (MOU)[5] regarding the process by which the merger would go forward. Id. at ¶ 26.[6] Pursuant to its terms, "each party to the MOU contributed a set figure to finance 'startup costs and accounting for due diligence.'" Id. at ¶ 29. Taking steps to further facilitate the merger, SJVC "obtain[ed] new medical record, billing and financial management services with StreamlineMD," id. at ¶¶ 39, 53, where SJVC had not previously utilized some of these services with StreamlineMD. Id. at ¶ 16. After SJVC transferred its billing records to StreamlineMD, StreamlineMD "reviewed those client files in some form, [and] proposed changes and clarifications." Id. at ¶ 54. In December 2015, and allegedly "at Heinz's insistence, [SJVC] provided CVDJBA additional and more detailed financial information about [SJVC] . . . ." Id. at ¶¶ 41, 54-55, 67. On December 28, 2015, "Heinz, CVDJBA, Mullen, and Curley" formed the new consolidated medical practice. Id. at ¶ 30; Doc. 42-15 (Certificate of Formation for CVVD, LLC). However, the Defendants ultimately declined to include SJVC among the medical practices in the new

---

[4] CVDJBA "is not a medical practice and treats no patients. CVDJBA, LLC renders medical practice management services to several medical practices located in Arizona, New Mexico, and Texas." Heinz Declaration at ¶ 7.

[5] The parties have filed, under seal, an unredacted copy of the Memorandum of Understanding. See Doc. 55 (MOU), filed April 13, 2018. As with the Service Agreement, because the document has been filed under seal, the Court will not directly quote from it. However, to the extent that the parties rely on or refer to the MOU's terms and conditions, the Court will note when it agrees or disagrees with how the parties construe the MOU and its effect. Likewise, when necessary, the Court will generically describe the MOU's content.

[6] SJVC signed the MOU on September 4, 2015, while a representative from Healthcare Consolidated Solutions, the entity created to facilitate the establishment of the new medical practice, signed the MOU on October 15, 2015. MOU at 4.

venture. SA Complaint at ¶¶ 31, 35, 63. Mullen and Curley also allegedly used "their positions with StreamlineMD to terminate the Service Agreement" between StreamlineMD and SJVC to "increase pressure on [SJVC] and further diminish its ability to compete" with the newly formed company. Id. at ¶ 38.

SJVC asserts that throughout its relationship with StreamlineMD, and during its discussions with Mullen, Curley, and Heinz regarding the new business venture, the StreamlineMD Defendants exercised unauthorized access to SJVC's Protected Information by virtue of the 2011 Service Agreement. Id. at ¶¶ 18, 22-23, 24, 31, 33. SJVC further alleges that Mullen and Curley shared this information with Heinz. Id. at ¶¶ 25, 32, 33, 40. According to SJVC, the StreamlineMD Defendants did so with the purpose of gaining information about SJVC's practice so that upon establishing the new consolidated medical practice, the Defendants would be better poised to compete with and isolate SJVC. Id. at ¶¶ 18, 22, 24, 30-31, 34, 38-39. Moreover, SJVC alleges that to the extent that it shared its Protected Information with the Defendants in order to further the new business venture, SJVC did so without knowing that the Defendants sought its information solely for the purpose of using that information to compete against SJVC, and never with the intent to include SJVC in the new consolidated medical practice. Id. at ¶¶ 22, 32, 39, 41.[7]

SJVC subsequently initiated the instant action against StreamlineMD, Mullen, Curley, and CVDJBA. In its SA Complaint, SJVC asserts six claims. In Count I, it alleges that the StreamlineMD Defendants violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (CFAA). Specifically, SJVC asserts that the StreamlineMD Defendants

---

[7] As necessary throughout the Order, the Court will address additional facts drawn from SJVC's SA Complaint, as well as from CDVJBA's and SJVC's affidavits, declarations, and other evidence.

unlawfully obtained information from SJVC's computer systems in violation of 18 U.S.C. § 1030(a)(2). SA Complaint at ¶¶ 44-59. In Count II, SJVC alleges that the StreamlineMD Defendants unlawfully obtained information from SJVC's computer systems with the intent to defraud SJVC in violation of 18 U.S.C. § 1030(a)(4). Id. at ¶¶ 50-55. In Count III, SJVC alleges that Mullen and Curley violated 18 U.S.C. § 2701 of the Electronic Communications Privacy Act (ECPA) by gaining access to SJVC's Protected Information by virtue of the electronic communication services allegedly inherent in the StreamlineMD's information management system. Id. at ¶¶ 56-59. In Count IV, SJVC alleges that all the Defendants (i.e., the StreamlineMD Defendants and CVDJBA) stole SJVC's trade secrets in violation of Florida Statutes sections 812.081 and 812.035. Id. at ¶¶ 60-69. In Count V, SJVC further asserts that StreamlineMD violated Florida's Uniform Trade Secrets Act, see Fla. Laws ch. 688, because the company's acquisition and use of SJVC's trade secrets was unlawful. Id. at ¶¶ 70-77.[8] Finally, in Count VI, SJVC brings a breach of contract action against StreamlineMD.[9] Id. at ¶¶ 78-85.[10]

## III.   ARGUMENTS OF THE PARTIES

In the StreamlineMD Motion, the StreamlineMD Defendants move to dismiss Counts I, II, III, IV, and V of SJVC's SA Complaint for failure to state claims for which relief can be granted. As to Counts I and II, the StreamlineMD Defendants assert that SJVC failed to sufficiently allege that it suffered statutory losses as defined and required by the CFAA. See StreamlineMD Motion at 4-9. In seeking to dismiss Count III, the

---

[8] For Counts I - V, SJVC seeks "damages, injunctive relief as requested, costs of this action, reasonable attorneys' fees and such other relief as this court deems appropriate." Id. at 13, 15, 16,18, 20.

[9] None of the Defendants address Count VI in their respective Motions to Dismiss. Therefore, the Court will not discuss it further.

[10] The Court exercises federal question subject matter jurisdiction over SJVC's Counts I – III, pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Counts IV – VI, pursuant to 28 U.S.C. § 1367.

StreamlineMD Defendants assert that because SJVC failed to allege that the Defendants had "storage of emails or electronic communications on their servers," or that they "accessed electronic communications without authorization," id. at 10, SJVC's claim under the ECPA also fails. Id. at 9-10. Finally, the StreamlineMD Defendants contend that for both Counts IV and V, SJVC failed to allege that the information to which the Defendants allegedly gained access was a trade secret under Florida law. Id. at 11-12. Accordingly, the StreamlineMD Defendants assert that all of these claims should be dismissed for failure to state a claim upon which relief can be granted.

In response, SJVC argues that as to both Counts I and II, it has sufficiently alleged losses as required under the CFAA. See SJVC Response to StreamlineMD at 3-8. In terms of Count III, SJVC asserts that "[t]he entire StreamlineMD system was set up to allow the exchange and storage of various electronic communications," id. at 8, and hence SJVC sufficiently alleged a claim under the ECPA. Finally, as to Counts IV and V, SJVC argues that it has sufficiently identified trade secrets as defined by Florida law. Id. at 9-12.

In the CVDJBA Motion, CVDJBA first asserts that SJVC's action against it should be dismissed for lack of personal jurisdiction. In this context, CVDJBA contends that all the contacts and interactions that its President and CEO, Heinz, had with St. George and SJVC, were on behalf of business entities distinct and entirely separate from CVDJBA. Hence, CVDJBA argues that SJVC's claims against it are misplaced because CVDJBA has had no contact with the state of Florida warranting its jurisdictional power over CVDJBA. CVDJBA Motion at 8, 10-28. Additionally, CVDJBA raises substantive challenges to the sufficiency of SJVC's trade secrets claim. First, CVDJBA asserts that

SJVC's claim for damages or attorney's fees is misplaced.  Id. at 28-29.  Second, CVDJBA argues that SJVC has failed to allege the requisite intent for trade secret theft, id. at 29-30, and that SJVC has insufficiently pleaded that CVDJBA stole or embezzled from the Plaintiff.  Id. at 30.  Third, CVDJBA contends that SJVC failed to allege the existence of trade secrets based upon the facts of this case.  Id. at 31-32.  Last, CVDJBA asserts that SJVC failed to plead that any alleged violation of the law occurred in Florida. Id. at 32.

In response to the CVDJBA Motion, SJVC contends that the Court does have personal jurisdiction over CVDJBA, and that contrary to CVDJBA's assertions, it did, through Heinz, have sufficient contacts with Florida to justify the exercise of personal jurisdiction over it.  SJVC Response to CVDJBA at 2-14.  SJVC also argues that in its SA Complaint it has sufficiently alleged that CVDJBA, through the actions of Heinz in conjunction with the StreamlineMD Defendants, stole its trade secrets.  Id. at 14-17. However, in response to CVDJBA's contention regarding attorney's fees, SJVC "acknowledges that a violation of section 812.035(1) does not provide for an award of attorneys' fees," id. at 17, and reserves the right to "further amend its Complaint to seek damages and attorneys' fees against CVDJBA for a violation of Florida's Uniform Trade Secrets Act."  Id.

In its Reply, CVDJBA argues that any misunderstanding or misconceptions SJVC held regarding the representative capacity in which Heinz met with SJVC are insufficient to establish personal jurisdiction over CVDJBA.  Rather, as asserted by CVDJBA, all of the pertinent interactions and transactions that took place with respect to the instant

controversy were between the SJVC and other business entities with which Heinz is associated. Id. at 1-9.

## IV. DISCUSSION

### a. Counts I & II: CFAA claim against the StreamlineMD Defendants

In Counts I and II, SJVC asserts that the StreamlineMD Defendants violated 18 U.S.C. §§ 1030(a)(2) and 1030(a)(4) of the CFAA, by intentionally and with the intent to defraud SJVC, accessing without authorization information from SJVC's computers. See 18 U.S.C. § 1030(a)(2) ("[w]hoever . . . intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer . . . shall be punished . . . ."); id. at § 1030(a)(4) ("[w]hoever . . . knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value . . . shall be punished . . . ."). While the CFAA is predominately designed as a criminal statute to punish computer hacking, see e.g., Trademotion, LLC v. Marketcliq, Inc., 857 F. Supp. 2d 1285, 1289-90 (M.D. Fla. 2012), the statute does allow private civil actions under a narrow set of circumstances. See 18 U.S.C. § 1030(g).[11]

---

[11] 18 U.S.C. § 1030(g) guides as follows:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages. No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage. No action may be brought under this subsection for the negligent design or manufacture of computer hardware, computer software, or firmware.

18 U.S.C. § 1030(g).

Here SJVC asserts a right to pursue the civil claims in Counts I and II as a plaintiff who has suffered a "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." Id. at § 1030(c)(4)(A)(i)(I). The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." Id. at § 1030(e)(11). As such, in order for SJVC to state a valid claim under the CFAA for Counts I and II, it must sufficiently allege losses that fall within 18 U.S.C. § 1030(e)(11)'s definition.

In this regard, the StreamlineMD Defendants assert that SJVC's allegations regarding its losses are insufficient, and therefore, both Counts I and II must be dismissed. In particular, the StreamlineMD Defendants contend that in order to state a claim under the CFAA, a plaintiff must allege that it suffered losses as a result of an interruption of services, see 18 U.S.C. § 1030(e)(11), which SJVC has not done. However, the StreamlineMD Defendants' narrow construction of definition of "loss" in § 1030(e)(11) is inconsistent with circuit precedent.

The Eleventh Circuit Court of Appeals addressed the interpretation of the definition of loss in 18 U.S.C. § 1030(e)(11) in Brown Jordan Int'l, Inc. v. Carmicle, 846 F.3d 1167 (11th Cir. 2017). There, the court determined that the language in § 1030(e)(11) identifies two separate types of loss:

> (1) reasonable costs incurred in connection with such activities as responding to a violation, assessing the damage done, and restoring the affected data, program system, or information to its condition prior to the violation; and (2) any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service. The statute is written in the disjunctive, making the first type of loss independent of an interruption

> of service. . . . "Loss" includes the direct costs of responding to the violation in the first portion of the definition, and consequential damages resulting from interruption of service in the second.

Id. at 1174 (internal citations omitted). In doing so, the Court rejected the narrow interpretation of the statute that would require that "any loss under the CFAA be the result of an 'interruption of service.'" Id. As such, a CFAA plaintiff may allege losses related to costs incurred in responding to the violation, assessing its damage, and restoring data and systems to their condition prior to the alleged violation, without having suffered an interruption of services. However, other consequential losses and damages must be associated with an interruption of service. See e.g., Global Physics Solutions, Inc. v. Benjamin, No. 17-60662-Civ-Scola, 2017 WL 6948721, *3 (S.D. Fla. June 26, 2017) (noting that loss included the direct costs of responding to the violation, as well as consequential damages flowing from an interruption of services);[12] Aquent LLC v. Stapleton, 65 F. Supp. 3d 1339, 1345 n.6 (M.D. Fla. 2014) ("only allegations of 'any revenue lost, cost incurred, or other consequential damages incurred' need" to be related to an interruption in service); TEC Serv, LLC v. Crabb, No. 11-62040-CIV-DIMITROULEAS/SNOW, 2013 WL 12177342, *3 (S.D. Fla. Jan. 14, 2013) (recognizing two ways to show loss: lost revenues and costs can be claimed as a result of interruption of services, and costs incurred in responding to a CFAA violation). With this statutory construction in place, the Court turns to SJVC's loss allegations in its SA Complaint.

SJVC's SA Complaint is by no means a model of clarity, and contains many allegations that do not fall within the scope of the CFAA. Throughout the facts section of

---

[12] The Court notes that "[a]lthough an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally FED. R. APP. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

SJVC's SA Complaint, SJVC details its initial business relationship with StreamlineMD, and the terms of the Service Agreement between the two. SA Complaint at ¶¶ 14-17. In the facts section of the SA Complaint, SJVC also details interactions between SJVC and the Defendants in the course of the parties' attempt to enter into a new business venture, along with multiple actions SJVC took to facilitate its integration into the new company, many at the behest of the Defendants. Id. at ¶¶ 19-21, 26, 29, 32, 36, 39, 41. However, the only statement within the facts section that references any direct action SJVC took upon discerning that the Defendants had allegedly accessed SJVC's information in an unauthorized manner is that SJVC "complained and asked [Mullen and Curley] not to use its Protected Information to compete." Id. at ¶ 38. Otherwise, the facts section of the SA Complaint does not contain any specific allegations regarding the losses SJVC suffered as a result of the StreamlineMD Defendants' alleged unauthorized access of its information, or the actions SJVC took in response to that alleged unauthorized access.

However, within its specific allegations for Counts I and II, SJVC provides additional allegations. In relation to Count I, SJVC asserts that it has suffered damages and losses

> in excess of $5,000 over a one-year period, among other reasons, because, the integrity of Plaintiff's computer system, its license to use StreamlineMD's software, and its property interest in its Protected Information therein were impaired by StreamlineMD, Curley and Mullen's unauthorized access to the Protected Information and use of it for their own personal gain.

Id. at ¶ 47. SJVC further asserts its

> damages include money Plaintiff paid at the direction of [Mullen and Curley], lost time and effort and distraction from Plaintiff's practice, lost time and effort needed to take subsequent remedial measures to prevent a breach of access from occurring again, lost Protected Information, damages to Plaintiff's reputation, and the loss of future income to Plaintiff.

Id. at ¶ 48. Likewise, in relation to Count II, SJVC describes that its losses exceeded

$5000 over a one year period because

> Plaintiff's work through its primary doctor, Dr. St. George, was interrupted
> for weeks in trying to understand and work with [Mullen and Curley]; [Mullen
> and Curley] requested changes to Plaintiff's billing practices asking Plaintiff
> to move all of Plaintiff's billing to StreamlineMD, which Plaintiff did; and
> where, because of the complexity of the licensed software StreamlineMD
> provided, and the disruption to Plaintiff from the intended participation in
> [the new business venture], Plaintiff's revenues diminished; Plaintiff needed
> to obtain new experts and software licenses; and the day-to-day of Plaintiff's
> practice was and is disrupted and interfered with due to [Mullen and
> Curley's] unauthorized access to the Protected Information and use of it for
> their own personal gain.
> . . .
> Plaintiff had to devote substantial resources to managing its financial data,
> including appointment scheduling, paying accountants, service
> identification, HIPPA protected records, and billing, and suffered
> impairment to its reputation and goodwill, lost revenues, and lost or delayed
> critical data as a result of StreamlineMD and [Mullen and Curley's]
> unauthorized access to Plaintiff's Protected Information. [Mullen and
> Curley] and CVDJBA insisted that Plaintiff transfer its billing practices to
> StreamlineMD, and thereafter, clearly having reviewed those client files in
> some form, proposed changes and clarifications. In doing so, Heinz of
> CVDJBA worked with StreamlineMD to obtain and manipulate the data from
> Plaintiff.
> . . .
> Plaintiff incurred substantial expenses both in its internal changes made
> because of these incursions and unauthorized access, and in other
> expenses in responding to the Defendants' unauthorized access and use
> and assessing the scope of intrusion and extent of damages to its computer
> systems (and Plaintiff's management practices contained therein) caused
> by the Defendants' actions.

Id. at ¶¶ 53-55.

First, it is important to note that nowhere within SJVC's allegations does it assert

that it suffered an interruption of service as a result of the StreamlineMD Defendants'

alleged intentional and unlawful access of SJVC's Protected Information on its computers.

Therefore, SJVC's claimed losses must fall within the first category of losses described

in 18 U.S.C. § 1030(e)(11): "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense . . . ."  18 U.S.C. § 1030(e)(11); see also Brown Jordan Int'l, Inc., 846 F.3d at 1174.

Upon review of SJVC's SA Complaint, the Court observes that many of SJVC's claimed losses have nothing to do with the costs it may have incurred in responding to the StreamlineMD Defendants' alleged offenses under the CFAA, or in conducting a damage assessment, or in restoring its data, programs, systems, and information to their condition prior to the offense.  18 U.S.C. § 1030(e)(11).  Indeed, most of SJVC's claimed losses address the actions it took in its attempt to enter into the new business venture with the Defendants, which for whatever reason, ultimately were in vain.  These include the "money Plaintiff paid at the direction of [Mullen and Curley]" pursuant to the MOU, "lost time and effort and distraction from Plaintiff's practice," "damages to Plaintiff's reputation, and the loss of future income to Plaintiff."  SA Complaint at ¶ 48.  Also included within this category of losses are SJVC's allegations regarding work interruptions for St. George, who spent

> weeks in trying to understand and work with [Mullen and Curley]; [Mullen and Curley] requested changes to Plaintiff's billing practices asking Plaintiff to move all of Plaintiff's billing to StreamlineMD, which Plaintiff did; and where, because of the complexity of the licensed software StreamlineMD provided, and the disruption to Plaintiff from the intended participation in [the new business venture] Plaintiff's revenues diminished.

Id. at ¶ 53.  Finally, included among SJVC's allegations of loss associated with its failed business venture with the Defendants are SJVC's asserted losses regarding the actions it took at the insistence of the Defendants to "transfer its billing practices to StreamlineMD,

and thereafter, [the Defendants] clearly having reviewed those client files in some form, proposed changes and clarifications. . . . Plaintiff incurred substantial expenses both in its internal changes made because of these incursions . . . ." Id. at ¶ 54-55.[13]  These asserted losses are best described as economic or consequential losses born out of SJVC's failed attempt to enter into the new consolidated medical practice with the Defendants.  However, none of these alleged losses fall within the statutorily defined categories of losses required to state a claim under the CFAA.  See e.g., Aquent LLC, 65 F. Supp. 3d at 1345 (loss of trade secret is not a loss under the CFAA); Advanced Fluid Sys., Inc. v. Huber, 28 F. Supp. 3d 306, 330 (M.D. Pa. 2014) (loss under the CFAA does not include claims for lost business opportunities, damaged reputation, or other missed revenue opportunities); Synthes, Inc. v. Emerge Med., Inc., 25 F. Supp. 3d 617, 719 (E.D. Pa. 2014) (harm to ongoing business venture is not a loss under the CFAA); Fontana v. Corry, No. 10-1685, 2011 WL 4473285, *8 (W.D. Pa. Aug. 30, 2011), report and recommendation adopted, No. 2:10-CV-1685, 2011 WL 4461313 (W.D. Pa. Sept. 26, 2011) (claim for lost revenue due to trade secret dissemination not loss under CFAA); Mortgage Now, Inc. v. Stone, No. 3:09cv80/MCR/MD, 2010 WL 11519201, *5 (N.D. Fla. Sept. 29, 2010) (lost profits do not constitute a loss under the CFAA).

Having culled much of the chaff from SJVC's allegations of loss, there nonetheless remain a few strands of wheat.  At least two of the remaining allegations of loss plausibly appear to fall within the definition of loss under 18 U.S.C. § 1030(e)(11).  See 18 U.S.C.

---

[13] SJVC also includes within its litany of losses the claim that it "needed to obtain new experts and software licenses."  SA Complaint at ¶ 53.  In light of SJVC's allegation that StreamlineMD eventually terminated its Service Agreement with SJVC, id. at ¶ 38, the Court construes this claimed loss as related to the dissolution of the original Service Agreement between SJVC and StreamlineMD, and not a loss associated with StreamlineMD's alleged unauthorized access to SJVC's Protected Information.

§ 1030(e)(11) ("'loss' means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense . . . ."). These allegations include SJVC's statement that it suffered "lost time and effort needed to take subsequent remedial measures to prevent a breach of access from occurring again, [and] lost Protected Information," SA Complaint at ¶ 48, and that SJVC incurred "other expenses in responding to the Defendants' unauthorized access and use and assessing the scope of intrusion and extent of damages to its computer systems (and Plaintiff's management practices contained therein) caused by the Defendants' actions." Id. at ¶ 55. Additionally, in reading the facts alleged in SJVC's SA Complaint and drawing all reasonable inferences in SJVC's favor, see Omar, 334 F.3d at 1247, it is possible to construe other scattered allegations as falling within the types of losses detailed in 18 U.S.C. § 1030(e)(11). These include SJVC's allegations that "the day-to-day of Plaintiff's practice was and is disrupted and interfered with due to [Mullen and Curley's] unauthorized access to the Protected Information," SA Complaint at ¶ 53, and that SJVC had to "devote substantial resources to managing its financial data, including appointment scheduling, paying accountants, service identification, HIPPA protected records, and billing . . . and lost or delayed critical data as a result of [the StreamlineMD Defendants'] unauthorized access to Plaintiff's Protected Information." Id. at ¶ 54.[14]

---

[14] Placing these last two allegations in the context of SJVC's other claims of loss against the StreamlineMD Defendants, and given that the overwhelming emphasis of SJVC's claimed losses focuses on its failed business venture with the StreamlineMD Defendants, there is certainly ground to construe these allegations as more aligned with the failed business venture than with StreamlineMD's alleged unauthorized access to SJVC's Protected Information. Nonetheless, construing the allegations in SJVC's favor, the Court reads them as relating to the StreamlineMD Defendants' alleged unlawful access to SJVC's information.

However, SJVC's allegations that it "suffered impairment to its reputation and goodwill, [and] lost revenues, as a result of [the StreamlineMD Defendants'] unauthorized access to Plaintiff's Protected Information" id. at ¶ 54, appears to fall within the second category of losses outlined in 18 U.S.C. §

SJVC's allegations of loss are by no means robust. And without question, in further proceedings, SJVC bears the burden of substantiating these allegations with evidence.[15] However, at this the motion to dismiss stage of the litigation, where the Court is required to draw all reasonable inferences in the non-moving plaintiff's favor, see Omar, 334 F.3d at 1247, the Court concludes SJVC has sufficiently, albeit narrowly, asserted losses as required under the CFAA. Courts within the Eleventh Circuit, as well as in other jurisdictions, faced with similarly sparse allegations of loss under the CFAA, nonetheless have determined those allegations to be sufficient to survive a motion to dismiss. See e.g., Segerdahl Corp. v. Ferruzza, No. 17 cv 3015, 2018 WL 828062, *4 (N.D. Ill. Feb. 10, 2018) (plaintiff's allegation that it had to expend resources "in excess of $5,000 . . . to investigate the . . . misconduct, conduct forensic examination of devices to ascertain the scope of [defendant's] misconduct, and perform remedial measures as a result" was sufficient); Chamberlain Group, Inc. v. Techtronic Indus. N. Am. Inc., No. 16 CV 06113, 2017 WL 4269005, *7 (N.D. Ill. Sept. 26, 2017) (plaintiff's allegations of "'more than $5,000 in costs' as a result of 'identifying and ascertaining the extent of [defendant's] unauthorized access to and acquisition' of [plaintiff's] information" was sufficient); Creative Movement & Dance, Inc. v. Pure Performance, LLC, No. 1:16-CV-3285-MHC, 2017 WL 4998649, *4 (N.D. Ga. Jul. 24, 2017) (plaintiff's assertions that it "incurred sufficiently 'substantial costs' investigating defendants' alleged impairment of its website database" sufficient); Obeid v. La Mack, No. 14CV6498-LTS-MHD, 2017 WL 1215753,

---

1030(e)(11), which requires the plaintiff to assert an interruption of services. SJVC has not done so here, and therefore the Court will not consider these loss allegations any further.

[15] In this regard, the Court notes that SJVC may ultimately struggle to prove its allegations of loss. Given the Court's rejection of many of the losses alleged by SJVC in relation to Counts I and II, SJVC will have to prove that its alleged losses associated with the remedial measures it took in response to the StreamlineMD Defendants' alleged unauthorized access of SJVC's information exceeded $5,000.

*8 (S.D. N.Y. Mar. 31, 2017) (party's allegations that it "incurred costs to re-secure [its] servers and otherwise repair the damage . . . caused" was sufficient); Aquent LLC, 65 F. Supp. 3d at 1345 (plaintiff's allegations that it "suffered losses in excess of $5,000 in a one-year period, including, without limitation, the costs of engaging a computer forensics firm to respond to [defendant's] offense and to analyze and assess the extent of [defendant's] wrongful taking of information from [plaintiff's] computers, as well as [defendant's] attempts to delete any trail of her misconduct" were sufficient); Ferring Pharm. Inc. v. Watson Pharm., Inc., No. 2:12-cv-05824, 2014 WL 12634303, *5 (D. N.J. Aug. 4, 2014) (party's allegation of "losses in excess of $5,000, including but not limited to losses sustained in responding to [offender's] actions, investigating [offender's] actions, and taking remedial steps to prevent [offender's] further actions" was sufficient); Oracle Am., Inc. v. Service Key, LLC, No. C 12-00790 SBA, 2012 WL 6019580, *4 (N.D. Cal. Dec. 3, 2012) (plaintiff's allegations sufficient where it alleged it "incurred costs as a result of investigating and conducting a damage assessment in response to [defendant's] actions"); Farmers Ins. Exchange v. Auto Club Group, 823 F. Supp. 2d 847, 855 (N.D. Ill. 2011) (plaintiff's allegations "that it incurred losses 'associated with identifying and ascertaining the extent of [defendant's] unauthorized access to and acquisition of [plaintiff's] information" was sufficient); Penrose Computer Marketgroup, Inc. v. Camin, 682 F. Supp. 2d 202, 208 (N.D. N.Y. 2010) (plaintiff's allegation sufficient where it "alleged that Defendant's unauthorized activity resulted in over $5,000 in losses, which included the cost to investigate Defendant's actions and assess the resulting damages").

Accordingly, drawing all reasonable inferences in SJVC's favor, as the Court must, the Court determines that at this stage of the proceedings, SJVC has sufficiently plead

losses pursuant to 18 U.S.C. § 1030(e)(11), as required to state a claim under the CFAA. Therefore, the StreamlineMD Defendants' Motion seeking dismissal of Counts I and II is due to be denied.

### b. Count III: ECPA claim against Mullen and Curley

In Count III, SJVC asserts that Mullen and Curley violated Title II of the ECPA, 18 U.S.C. § 2701, by "intentionally access[ing] without authorization a facility through which an electronic communication service is provided . . . and thereby obtain[ed] . . . access to a wire or electronic communication while it is in electronic storage in such a system . . . ." 18 U.S.C. § 2701(a)(1); SA Complaint at ¶ 57. Specifically, SJVC asserts that Mullen and Curley exceeded "their authorization to access[] password protected areas of StreamlineMD's clinical electronic medical records management software and services and StreamlineMD's database containing Plaintiff's Protected Information . . . and . . . obtain[ed] access to electronic communications information while such communications were in electronic storage in that database." SA Complaint at ¶ 57.

In advocating that the Court dismiss this claim, Mullen and Curley argue that SJVC has failed to sufficiently allege that the men accessed electronic communications belonging to SJVC, or that they did so through an electronic communications system. Particularly relevant here is whether the StreamlineMD information management system, which contained SJVC's Protected Information, and from which Mullen and Curley allegedly unlawfully accessed SJVC's Protected Information, constitutes an "electronic communications service" under the ECPA.[16]

---

[16] The ECPA, like the CFAA, "is primarily a criminal statute with a civil component aimed at creating a private right of action against computer hackers and electronic trespassers." IPC Sys., Inc. v. Garrigan, No. 1:11-cv-3910-AT, 2012 WL 12872028, *8 (N.D. Ga. May 21, 2012).

The ECPA defines an "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). See also United States v. Steiger, 318 F.3d 1039, 1049 (11th Cir. 2003) (statute "clearly applies, for example, to information stored with a phone company, Internet Service Provider (ISP), or electronic bulletin board system (BBS)."); United States v. Biro, 143 F.3d 1421, 1425 n.5 (11th Cir. 1998) ("[e]xisting telephone companies and electronic mail companies are providers of electronic communications services"); PS Data Servs., Inc. v. Kane Steel & Iron, LLC, No. 2:07-CV-0127-RDP, 2007 WL 9712071, *6 (N.D. Ala. Sept. 20, 2007) ("A service provider can only be an electronic communication service if it provides another with the ability to send or receive electronic communications."). Likewise, an "electronic communication" means "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." Id. at § 2510(13).[17]

Courts that have examined the scope and application of the ECPA in the context of "electronic communications services" have done so primarily in factual settings related to unlawfully intercepted and obtained e-mails, telephone calls, and communications exchanged on internet websites, electronic bulletin boards, and dropbox systems.[18] Notably, the "majority of courts addressing [the statute's scope] interpret the ECPA . . . to encompass only traditional 'electronic communications services' such as internet service

---

[17] An "electronic communication system" also includes within its definition the ability to send or receive "wire communications," which include the "aural transfer" of information, 18 U.S.C. § 2510(1), are not at issue in this case.

[18] Dropbox "is a cloud storage product that allows a user to create an account to save and store digital content . . . and to share that content by providing others with the e-mail address and password used to log into the account." TLS Mgmt. v. Rodriguez-Toledo, 260 F. Supp. 3d. 154, 157 n.4 (D. P.R. 2016).

providers, electronic mail providers, telecommunications companies, and remote computing services." IPC Sys., Inc., 2012 WL 12872028 at *9 (citing cases) (noting that in construing statutory definition of "electronic communications service," "courts have distinguished those entities that sell access to the internet from those that sell goods and services on the internet or otherwise make use of internet services to conduct their day to day business activities"); see also Steiger, 318 F.3d at 1049 (noting the ECPA's application in context of internet service providers or electronic bulletin board systems); Biro, 143 F.3d at 1425 n.5 (applying ECPA in context of telephone companies and electronic mail companies providing communication services). Nothing in the allegations of SJVC's SA Complaint suggests that the StreamlineMD information management system falls within the definition of an electronic communication system.

As noted earlier, in its SA Complaint, SJVC describes the StreamlineMD information management system as a "cloud-based integrated software platform [to which a physician can] . . . upload a physician's financial and performance data, which the physician can then use to generate reports and other documents on practice management, revenue cycle management, and billing in order to enhance his or her practice." Id. at ¶ 13. More specifically, SJVC alleges StreamlineMD granted it a license to "use StreamlineMD's software and access StreamlineMD's database and information management systems in exchange for a recurring fee." Id. at ¶ 14. Additionally, SJVC alleges that,

> StreamlineMD's clinical electronic medical record software and services, along with related practice management software, helped and managed all aspects of Plaintiff's practice, except patient billing. With the license afforded by the Service Agreement, Plaintiff used the software and services to generate reports containing significant confidential data and trade secret information belonging to Plaintiff, including, without limitation, the following:

confidential patient information, procedures per month, finances (including reimbursement), insurance payment schedules, and patient demographics (collectively, the "Protected Information"). All aspects of Plaintiff's financial, patient/patient scheduling, medical record and referring physician data were contained within the software and system licensed to Plaintiff by StreamlineMD.

Id. at ¶ 16.

SJVC's allegations regarding the StreamlineMD information management system describe a service through which SJVC was able to gain access to its information which was stored in electronic databases managed and maintained by StreamlineMD. However, nothing within these allegations suggests a system through which SJVC transmitted or received electronic communications. Rather, all the allegations discuss SJVC's electronic access and use of information, rather than the transmission or receipt of information. Further, while SJVC suggests that aspects of the StreamlineMD information management system included "electronically billing patients, scheduling patient appointments, and patient online bill pay," SJVC Response to StreamlineMD at 6, SJVC does not allege how this aspect of the StreamlineMD information management system resulted in electronic communications. In sum, SJVC does not allege any facts suggesting that the StreamlineMD information management system is the equivalent or similar to "traditional electronic communication services." Nor has it identified any legal authority suggesting that an information management system like that of StreamlineMD constitutes an electronic communication service. Moreover, the authority cited by the Court above directs a contrary conclusion. As such, the Court is not persuaded that SJVC has sufficiently alleged the existence of an electronic communications service that could have been accessed by the named Defendants.

Finally, to the extent that SJVC alleges that Mullen and Curley "obtain[ed] access to electronic communications information while such communications were in electronic storage in that database," SA Complaint at ¶ 57, this allegation is purely conclusory and merely paraphrases the statutory language of 18 U.S.C. § 2701(a).  See 18 U.S.C. § 2701(a) ("[w]however intentionally accesses without authorization a facility through which an electronic communication service is provided . . . and thereby obtains . . . <u>access to . . . electronic communication while it is in electronic storage</u> in such system shall be punished . . .") (emphasis added).  SJVC alleges no facts indicating that Mullen or Curley, through the StreamlineMD information management system, gained access to electronic communications that were stored within that system.  Thus, it fails to provide a basis for a plausible claim.

With regard to Count III of the SA Complaint, the Court determines that SJVC has failed to allege the requisite elements of a claim under the ECPA.  Therefore the StreamlineMD Motion is due to be granted to the extent that Count III of the SA Complaint will be dismissed for failure to state a claim.

### c. Counts IV and V:  Theft and Misappropriation of Trade Secrets claims

In Counts IV and V, SJVC alleges theft and misappropriation of trade secrets claims.  Specifically, in Count IV, SJVC asserts that all of the Defendants (the StreamlineMD Defendants and CVDJBA) stole its trade secrets in violation of Florida Statutes section 812.081.[19]  Similarly, in Count V, SJVC asserts that StreamlineMD

---

[19]Florida Statutes section 812.081 provides that

[a]ny person who, with intent to deprive or withhold from the owner thereof the control of a trade secret, or with an intent to appropriate a trade secret to his or her own use or to the use of another, steals or embezzles an article representing a trade secret or without authority makes or causes to be made a copy of an article representing a trade secret commits a felony of the third degree . . . .

FLA. STAT. ANN. § 812.081.

misappropriated SJVC's trade secrets in violation of the Florida Uniform Trade Secrets Act.  See FLA. STAT. ANN. § 688.001 et seq.[20]

In response to Count IV, all of the Defendants assert that SJVC has failed to state a claim upon which relief can be granted because it has not sufficiently alleged the existence of a trade secret.  See StreamlineMD Motion at 11-12; CVDJBA Motion at 31-32.[21]  StreamlineMD raises the same argument in seeking to dismiss Count V.  See StreamlineMD Motion at 11-12.

However, before the Court can address whether SJVC sufficiently pled the existence of a trade secret, the Court must resolve CVDJBA's challenge to the existence of personal jurisdiction over it for purposes of Count IV of the SA Complaint.  "As a general rule, courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims."  Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 940 (11th Cir. 1997) (citing Madara v. Hall, 916 F.2d 1510, 1513–14 & n. 1 (11th Cir.1990); Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, Civil 2d § 1351, at 243–44 (1990)).  Here, however, the very nature of

---

[20] Under the Florida Uniform Trade Secrets Act, misappropriation means
    (a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
    (b) Disclosure or use of a trade secret of another without express or implied consent by a person who:
        1. Used improper means to acquire knowledge of the trade secret; or
        2. At the time of disclosure or use, knew or had reason to know that her or his knowledge of the trade secret was:
            a. Derived from or through a person who had utilized improper means to acquire it;
            b. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
            c. Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use . . . .
FLA. STAT. ANN. § 688.002.

[21] CVDJBA also asserts that Count IV should be dismissed against it because SJVC failed to allege the requisite intent for trade secret theft, CVDJBA Motion at 29-30, SJVC insufficiently plead that CVDJBA stole or embezzled from the Plaintiff, id. at 30, and that SJVC failed to plead that any violation occurred in Florida. Id. at 32.

CVDJBA's personal jurisdiction challenge nevertheless requires the Court to evaluate the question of whether SJVC has pled sufficient facts to plausibly support its theft or misappropriation of trade secrets claims, which ultimately will be dispositive of both Counts IV and V.

In seeking to dismiss Count IV, CVDJBA asserts, in part, that the Court lacks personal jurisdiction over it. Generally, CVDJBA argues that SJVC mistook any communications and meetings it had with Heinz regarding the new business venture as exercised on behalf of CVDJBA, a company for which Heinz serves as President and CEO, rather than on behalf of two other business entities for which Heinz was in fact acting. CVDJBA Motion at 8-9. Otherwise, CVDJBA asserts that it has no connections whatsoever with the state of Florida, has no business activities in the state, has not committed any tortious act in Florida, and thus cannot be haled into courts in Florida. CVDJBA Motion at 10-28. In response, SJVC counters that Heinz's presence and contacts with the state of Florida were on behalf of CVDJBA and were sufficient to warrant the Court's exercise of personal jurisdiction over the company. SJVC Response to CVDJBA at 1.

As referenced earlier in the Order, in ruling on a motion to dismiss for lack of personal jurisdiction, a district court has discretion to conduct an evidentiary hearing. See Delong Equip. Co. v. Wash. Mills Abrasive Co., 840 F.2d 843, 845 (11th Cir. 1988). Here, upon consideration of CVDJBA's Motion, SJVC's Response to CVDJBA, and CVDJBA's Reply, the Court determines that an evidentiary hearing is not warranted. Thus, the Court turns to the question of whether SJVC has made a prima facie showing of facts sufficient to warrant the exercise of personal jurisdiction over the CVDJBA.

In order to determine whether personal jurisdiction exists over CVDJBA, the Court must engage in a two-part inquiry.  See Mut. Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312, 1319 (11th Cir. 2004).  First, the Court must determine "whether the exercise of jurisdiction is appropriate under [Florida]'s long-arm statute."  Id. (citing Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996)).  Second, the Court must consider whether exercising personal jurisdiction over CVDJBA "would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'"  Id. (quoting Sculptchair, Inc., 94 F.3d at 626). "Only if both prongs are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant."  Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 256 (11th Cir. 1996) (internal quotations omitted).

Turning to the first prong of the analysis, Florida's long-arm statute — Florida Statutes section 48.193 — confers two types of jurisdiction.  See NW Aircraft Capital Corp. v. Stewart, 842 So. 2d 190, 193-95 (Fla. Dist. Ct. App. 2003). First, section 48.193(1) lists enumerated acts which will confer specific personal jurisdiction over a defendant for suits arising from those acts.  See Fla. Stat. § 48.193(1). Next, section 48.193(2) "provides that Florida courts may exercise general personal jurisdiction" if the defendant engages in "substantial and not isolated activity in Florida[,]" whether or not the claims asserted actually involve the defendant's activities in Florida.  See Carmouche v. Tamborlee Mgmt., Inc., 789 F.3d 1201, 1203-04 (11th Cir. 2015) (emphasis in original). The reach of Florida's long-arm statute is a question of Florida law. See Meier ex rel.

Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1271 (11th Cir. 2002). Thus, this Court must construe the long-arm statute as would the Florida Supreme Court, and, absent some indication that the Florida Supreme Court would hold otherwise, this Court is bound to adhere to decisions of Florida's intermediate courts. See id.

Here, SJVC alleges

> Defendants are subject to the personal jurisdiction of this Court pursuant to: . . . Fla. Stat. § 48.193(1)(a), because Defendants have conducted, engaged in and carried out a business venture within the State of Florida; . . . Fla. Stat. § 48.193(1)(b), because Defendants have committed tortious acts within the State of Florida; and . . . Fla. Stat. § 48.193(2), because Defendants are engaged in substantial business activities within the State of Florida.

SA Complaint at ¶ 7.[22]  As such, SJVC alleges that the Court can exercise both specific and general jurisdiction over CVDJBA.

---

[22] As relevant here, Florida Statute section 48.193(1)(a) guides that

> [a] person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
> 2. Committing a tortious act within this state.
>  . . . .

FLA. STAT. ANN. § 48.103(1)(a).  Conversely, section 48.193(1)(b) details

> [n]otwithstanding any other provision of this subsection, an order issued, or a penalty or fine imposed, by an agency of another state is not enforceable against any person or entity incorporated or having its principal place of business in this state if the other state does not provide a mandatory right of review of the agency decision in a state court of competent jurisdiction.

Id. at § 48.193(1)(b).

Given the specific language of SJVC's pleadings, and the arguments it lays out in its Response to CVDJBA, the Court presumes that in alleging jurisdiction per section 48.193(1)(b), but stating that "Defendants have committed tortious acts within the State of Florida," SA Complaint at ¶ 7, SJVC intended to assert personal jurisdiction over CVDJBA pursuant to 48.193(1)(a)(2), rather than 48.193(1)(b).  There is nothing within SJVC's pleadings, aside from its reference to section 48.193(1)(b), to suggest that it intended to assert jurisdiction under that section.

The Court begins with SJVC's assertion that specific jurisdiction exists over CVDJBA because it committed a tortious act within the state.  See FLA. STAT. ANN. § 48.193(1)(a)(2).  As noted earlier, the Florida long-arm statute provides in pertinent part:

> (1)(a) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
> . . .
> 2. Committing a tortious act within this state.

FLA. STAT. ANN. § 48.193(1)(a)(2).  In order for the Court to address whether the allegations in SJVC's SA Complaint support jurisdiction in Florida on the basis that CVDJBA committed a tortious act here, the Court must first determine whether SJVC has pled a claim for theft of trade secrets against CVDJBA that is facially plausible.  See PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V., 598 F.3d 802, 808 (11th Cir. 2010).  To do so, the Court must evaluate SJVC's allegations pursuant to the Iqbal and Twombly standards laid out earlier in the Order.  Thus, the Court must determine whether the SA Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  See Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  In the context of this case the Court begins with the question of whether SJVC has alleged facts sufficient to state a plausible claim as to existence of a trade secret.

Florida law defines a trade secret as

> the whole or any portion or phase of . . . compilation of information which is for use, or is used, in the operation of a business and which provides the business an advantage, or an opportunity to obtain an advantage, over those who do not know or use it.  The term includes any scientific, technical, or commercial information, including financial information, and includes any design, process, procedure, list of suppliers, list of customers, business code, or improvement thereof.  Irrespective of novelty, invention,

patentability, the state of the prior art, and the level of skill in the business, art, or field to which the subject matter pertains, a trade secret is considered to be:

    1. Secret;

    2. Of value;

    3. For use or in use by the business; and

    4. Of advantage to the business, or providing an opportunity to obtain an advantage, over those who do not know or use it

when the owner thereof takes measures to prevent it from becoming available to persons other than those selected by the owner to have access thereto for limited purposes.

FLA. STAT. ANN. § 812.081(1)(c).  See also Del Monte Fresh Produce Co. v. Dole Food Co., Inc., 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001) ("To qualify as a trade secret, the information the plaintiff seeks to protect must derive economic value from not being readily ascertainable by others and must be the subject of reasonable efforts to protect its secrecy.").  In the SA Complaint, SJVC alleges that it stored within the StreamlineMD information management system "significant confidential data and trade secret information belonging to Plaintiff, including, without limitation, the following: confidential patient information, procedures per month, finances (including reimbursement), insurance payment schedules, and patient demographics (collectively, the 'Protected Information')."  SA Complaint at ¶ 16.  SJVC alleges that pursuant to the StreamlineMD Service Agreement, StreamlineMD had permission to use a

few specific types of Plaintiff's data housed within StreamlineMD's software: aggregate, de-identified portions of Plaintiff's data for use only in the design, evaluation and operation of StreamlineMD's services, research, development and marketing; nothing more. Neither this limited license for limited use of certain data belonging to Plaintiff, nor any other provision in the Service Agreement or the Business Associate Agreement afforded StreamlineMD, Mullen, Curley, or any other StreamlineMD employee authorization to access Plaintiff's Protected Information.

SA Complaint at ¶ 17.

Upon consideration of the SA Complaint, the Court determines that SJVC's allegations lay the beginnings of a foundation for an allegation of protected trade secrets, but go no further. SJVC has alleged that its Protected Information includes confidential patient information, which can fall within the definition of a trade secret. See e.g. AR2, LLC v. Rudnick, No. 14-80809-CIV, 2014 WL 4060029, *1 (S.D. Fla. Aug. 14, 2014) (patient information included in trade secrets claim); Alternative Med. Integration Group, L.P. v. Langford, No. 8:13-cv-2909-T-33AEP, 2014 WL 12572738, *1-2 (M.D. Fla. Aug. 1, 2014) (trade secrets claim included patient information); Audiology Distrib., LLC v. Simmons, No. 8:12-cv-02427-JDW-AEP, 2014 WL 7672536, *10 (M.D. Fla. May 27, 2014) (suggesting that confidential patient information was a trade secret). Applying Florida law, courts also recognize that customer lists can fall within the definition of trade secrets. See e.g. JetSmarter Inc. v. Benson, No. 17-62541-CIV-MORENO/SELTZER, 2018 WL 2709864, *4 (S.D. Fla. Apr. 6, 2018); All Leisure Holidays, Ltd. v. Novello, No. 12-62328-CIV, 2012 WL 5932364, *4 (S.D. Fla. Nov. 27, 2012); Merrill Lynch, Pierce, Fenner & Smith v. Hagerty, 808 F. Supp. 1555, 1558 (S.D. Fla. 1992). As such, SJVC's allegations take a first step in asserting the existence of a trade secret. However, SJVC's allegations do not go far enough and are missing other critical facts necessary to support a claim that the Protected Information at issue in this controversy falls within the ambit of a trade secret.

Significantly, SJVC's SA Complaint is devoid of any allegations that SJVC took "measures to prevent [its Protected Information] from becoming available to persons other than those selected by the owner to have access thereto for limited purposes." See FLA. STAT. ANN. § 812.081(1)(c). At most, SJVC alleges that neither the limited license it gave

StreamlineMD for use of certain data "nor any other provision in the Service Agreement or the Business Associate Agreement afforded StreamlineMD, Mullen, Curley, or any other StreamlineMD employee authorization to access Plaintiff's Protected Information." SA Complaint at ¶ 17. Likewise, it asserts that "[n]othing in the MOU granted the Defendants access to any of the Protected Information or allowed the Defendants to use the Protected Information." Id. at ¶ 28. The Court is not convinced that the language in the Service Agreement or the MOU supports an inference that SJVC took "measures to prevent [its Protected Information] from becoming available . . . ." FLA. STAT. ANN. § 812.081(1)(c).

While SJVC suggests that it did not authorize the StreamlineMD Defendants to access its Protected Information, SJVC fails to allege what steps it took to prohibit access or to protect against inadvertent disclosure of its Protected Information stored on StreamlineMD's software. Moreover, in focusing solely on whether the language of the Service Agreement or the MOU allowed the StreamlineMD Defendants to access SJVC's Protected Information, SJVC fails to address the critical question of what efforts it undertook to maintain the secrecy of its Protected Information. In this context, the Court further notes that SJVC willingly shared much of the data it designated as "Protected Information" in an effort to further the new consolidated medical practice, as well as in accordance with the MOU. Nowhere does SJVC allege that in the course of sharing this information with the Defendants, it placed additional restrictions or limits on how the Defendants could use or access that information. Nor does SJVC indicate any restrictions it may have placed on the Defendants' access to that information, should the business venture between the parties fail to be actualized, as was in fact the case here.

Additionally, SJVC sets forth no facts regarding how it sought to protect its information in terms of its own employee's access to the same, or in regard to other organizations with which SJVC might have business interactions. Without such allegations, a claim asserting the existence of a trade secret cannot succeed. See e.g., Advice Interactive Group, LLC v. Web.com Group, Inc., No. 3:17-cv-801-J-39MCR, 2017 WL 6554409, *7 (M.D. Fla. Oct. 20, 2017) (party took reasonable steps to protect secrecy "such as requiring third parties to sign non-disclosure agreements and employees to sign confidentiality agreements"); M.C. Dean, Inc. v. City of Miami Beach, Fla., 199 F. Supp. 3d 1349, 1356-57 (S.D. Fla. 2016) (party failed to "allege it took any steps to maintain the secrecy of its information" and therefore failed "to satisfy the definition of trade secret"); Fortiline, Inc. v. Moody, No. 12-CV-81271-KYSKAMP/HOPKINS, 2013 WL 12101142, *3 (S.D. Fla. Jan. 7, 2013) (list of customers are trade secrets "so long as the owner thereof takes measures to prevent it from being accessible to persons other than those selected by the owner."); Living Color Enter., Inc. v. CMN Plastics, Inc., No. 09-60459-CIV, 2009 WL 10668669, *7 (S.D. Fla. Apr. 15, 2009) (where plaintiff failed to show it took reasonable measures to keep its information from becoming available to others, there is no trade secret); Merrill Lynch, Pierce, Fenner & Smith, Inc., 808 F. Supp. at 1558 (where plaintiff alleged measures it took to ensure confidentiality of customer list, plaintiff sufficiently alleged a trade secret); Surterra Fla., LLC v. Fla. Dep't of Health, 223 So.3d 376, 380 (Fla. 1st Dist. Ct. App. 2017) (plaintiff must satisfy all requirements of trade secret definition). See also Dichard v. Morgan, No. 17-CV-00338-AJ, 2017 WL 5634110, *3 (D. N.H. Nov. 22, 2017) (party who fails to adequately plead that it took reasonable measures to preserve secrecy of information cannot succeed in theft of trade secrets

claim); <u>Raben Tire Co., LLC v. McFarland</u>, No. 5:16-CV-00141-TBR, 2017 WL 741569, *2 (W.D. Ky. Feb. 24, 2017) (plaintiff failed to allege misappropriation of a trade secret where "complaint [was] entirely devoid of any allegations of how it protected the information in question from dissemination"). Additionally, SJVC's allegations fail to contain any facts supporting an inference that its Protected Information "provides the business an advantage, or an opportunity to obtain an advantage, over those who do not know or use it." FLA. STAT. ANN. § 812.081(1)(c). Therefore, having carefully reviewed the allegations of the SA Complaint, the Court concludes that SJVC has failed to sufficiently allege the existence of a trade secret entitled to protect under Florida law.

In light of this conclusion, SJVC's assertion of specific personal jurisdiction over CVDJBA quickly dissembles. This is so because without plausibly alleging the existence of a trade secret, SJVC cannot allege that CVDJBA committed a theft of a trade secret. <u>See</u> FLA. STAT. ANN. § 812.081 ([a]ny person who, with intent to deprive or withhold from the owner thereof the control of a <u>trade secret</u>, or with an intent to appropriate a <u>trade secret</u> to his or her own use or to the use of another. . . commits a felony of the third degree . . . .) (emphasis added). SJVC's inability to assert a claim of theft of trade secrets forecloses its argument that CVDJBA has committed a tortious act within this state. <u>See</u> Fla. Stat. § 48.193(1)(a)(2). And, with its failure to establish that CVDJBA committed a tortious act within the state, SJVC cannot establish that specific personal jurisdiction is appropriate over CVDJBA under Florida Statutes section 48.193(1)(a)(2).

SJVC is equally unable to mount a successful argument that the court can exercise general jurisdiction over CVDJBA pursuant to Florida Statutes section 48.193(2). "The reach of [section 48.193(2)] extends to the limits o[f] personal jurisdiction imposed by the

Due Process Clause of the Fourteenth Amendment." Carmouche, 789 F.3d at 1204 (quoting Fraser v. Smith, 594 F.3d 842, 846 (11th Cir. 2010)). Thus, to determine whether the Court has general jurisdiction over any Defendant pursuant to section 48.193(2), the Court "need only determine whether [its] exercise of jurisdiction over [that Defendant] would exceed constitutional bounds." Id. (quoting Fraser, 594 F.3d at 846); see also Schulman v. Inst. for Shipboard Educ., 624 Fed. Appx. 1002, 1005 (11th Cir. 2015) (per curiam) (adopting and applying the same standard).

In this regard, the Court is guided by the Supreme Court's decisions in Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915 (2011), and Daimler AG v. Bauman, 134 S.Ct. 746 (2014). "Relying in large part on its decision in [Goodyear], the Daimler Court rejected as 'unacceptably grasping' the notion that a corporation is subject to general jurisdiction in every state in which it 'engages in a substantial, continuous, and systematic course of business.'" Erwin v. Ford Motor Co., No. 8:16-CV-01322-T-24AEP, 2016 WL 7655398, at *9 (M.D. Fla. Aug. 31, 2016) (quoting Daimler, 134 S. Ct. at 760). In doing so, the Court made clear that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." Daimler, 134 S. Ct. at 760. With respect to an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." Id. (quoting Goodyear, 564 U.S. at 925, 131 S. Ct. at 2853-54). Alternatively, for a corporation, "it is an equivalent place, one in which the corporation is fairly regarded as at home." Id. (citation omitted). "Since Daimler, the Eleventh Circuit has clarified that general jurisdiction is only appropriate over nonresident corporate defendants if 'the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal

place of business.'"  Erwin, 2016 WL 7655398, at *10 (quoting Carmouche, 789 F.3d at 1205). In Carmouche, the Eleventh Circuit—applying Daimler—explained that:

> [a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations, without offending due process when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State . . . And a corporation's operations in a forum other than its formal place of incorporation or principal place of business will be so substantial and of such a nature as to render the corporation at home in that State only in "exceptional" cases.

Id. at 1204 (internal citations and quotations omitted); see also Wolf v. Celebrity Cruises, Inc., 683 Fed. Appx. 786, 791-92 (11th Cir. 2017) (per curiam) (citing Carmouche and noting that the court held in that case that "a [defendant's] connections with Florida—including a Florida bank account, two Florida addresses [ ], purchasing insurance from Florida companies, filing a financing statement with the Florida Secretary of State, joining a non-profit trade organization based in Florida, and consenting to jurisdiction in [Florida]—were not so 'continuous and systematic' as to render it essentially at home there."). Notably, the Supreme Court has described Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952), where a corporation relocated from the Philippines to Ohio to establish a "center of ... wartime activities[,]" as an example of such an "exceptional case" which would permit the exercise of general jurisdiction under the post-Daimler paradigm. See BNSF Ry. Co. v. Tyrrell, 137 S. Ct. 1549, 1558 (2017) (emphasizing the extraordinary circumstances necessary to find a corporation at home in a state other than one in which it is incorporated or has a principal place of business).

SJVC has failed to make a prima facie showing that CVDJBA's presence in Florida includes activities that are so "continuous and systematic so as to render it essentially at home" in the state.  See Wolf, 683 Fed. Appx. at 791.  In its SA Complaint, SJVC alleges

that "Defendant CVDJBA is an Arizona limited liability company, doing business in Arizona as a vein clinic, with its principle place of business located at 19420 N. 5th Ave., Suite B 233, Glendale, AZ 85308.  James Heinz ('Heinz') is the CEO of CVDJBA."  SA Complaint at ¶ 5.  In discussing the potential business venture between the parties, SJVC further alleges

> in September 2015, Heinz, President/CEO of CVDJBA, visited Plaintiff in Jacksonville and discussed the financial benefits of Plaintiff joining Heinz and CVDJBA in a new corporate structure.
>
> Subsequently, in 2015 and 2016, Plaintiff, through Dr. St. George, met with Mullen and Heinz, who convinced Dr. St. George he should pursue this merger. Despite Dr. St. George's skepticism, Mullen and Heinz continued to argue what they represented to be the benefits of the transfer, without adequately disclosing to Dr. St. George the risk to his practice should the merger not be completed.

Id. at ¶¶ 20-21.  Additionally, SJVC alleges that "Heinz repeatedly traveled to Florida, and met in the Middle District . . . to discuss [the new venture] in glowing terms."  Id. at ¶ 36. None of these allegations are sufficient to establish that CVDJBA's presence in Florida rises to the level of being so substantial as to warrant the Court's exercise of general jurisdiction over it.[23]  Accordingly, the Court rejects SJVC's argument that general personal jurisdiction exists over SJVC by virtue of Florida Statutes section 48.193(2).[24]

_____

[23]The Court's conclusion on this question is bolstered by evidence proffered by CVDJBA in the Heinz Declaration.  There Heinz admits that he traveled to Florida and had several interactions with St. George and SJVC on behalf of business entities other than, and entirely separate from, CVDJBA.  Heinz Declaration at ¶¶ 73-81.  He further declares that CVDJBA has absolutely no presence, nor any interaction with anyone or any business within the state of Florida.  Id. at ¶¶ 4-36.

[24] Moreover, even before the Daimler Court clarified the limited set of circumstances that would subject a business entity to general jurisdiction, courts had found allegations similar to those of SJVC to be insufficient to establish general jurisdiction over a defendant.  See e.g., Turi v. Stacey, No. 5:13-cv-248-Oc-22PRL, 2015 WL 403228, *12 (M.D. Fla. Jan. 28, 2015) (rejecting argument that solicitation of business in Florida rises to the level necessary to assert general jurisdiction over a defendant); Tommy Bahama Grp., Inc. v. Eagle, No. 3:09-CV-641-J-32JRK, 2010 WL 3340538, *3 (M.D. Fla. Aug. 23, 2010) ("The occasional solicitation of business, even when considered in combination with the other asserted contacts, is not enough to establish general jurisdiction."); Bernardele v. Bonorino, 608 F. Supp. 2d 1313, 1327-28 (S.D. Fla. 2009) (attempt to create business in Florida does not establish general jurisdiction over defendant) (citing cases); Crowe v. Paragon Relocation Resources, Inc., 506 F. Supp. 2d 1113, 1124-25 (N.D. Fla.

SJVC also contends that CVDJBA could be haled into Florida courts pursuant to Florida Statutes section 48.193(1)(a)(1) (specific personal jurisdiction exists where defendant operated, conducted, engaged or carried on a business within the state). However, personal jurisdiction is established only if a plaintiff shows both that the exercise of jurisdiction is appropriate under the state's long-arm statute, and that the exercise of that jurisdiction comports with notions of Due Process. See Mut. Serv. Ins. Co., 358 F.3d at 1319. Here, because the Court has determined that SJVC has failed to present facts supporting a conclusion that exercising jurisdiction over CVDJBA in Florida comports with Due Process, see Carmouche, 789 F.3d at 1204-05, SJVC's reliance on section 48.193(1)(a)(1) is unavailing. Even if the Court were to find that CVDJBA conducted or engaged in some sort of business within Florida, and thus fell within the purview of section 48.193(1)(a)(1), SJVC would still be required to establish that exercising jurisdiction over CVDJBA would not violate Fourteenth Amendment due process principles. Because the Court has concluded that SJVC has failed to allege general jurisdiction over CVDJBA, SJVC cannot clear the second hurdle required for personal jurisdiction. Robinson, 74 F.3d at 256. Accordingly, SJVC has failed to make the requisite showings to support an exercise of personal jurisdiction over CVDJBA: (1) that the exercise of jurisdiction is appropriate under Florida's long-arm statute and (2) that the exercise of jurisdiction does not violate the Due Process Clause of the Fourteenth Amendment. Id. at 256. Therefore, the CVDJBA Motion seeking dismissal of Count IV for lack of personal jurisdiction is due to be granted.

2007) (solicitation of business in Florida not sufficient to establish general jurisdiction over defendant) (citing cases).

The StreamlineMD Defendants also moved to dismiss Count IV, as well as Count V, arguing that SJVC failed to allege facts sufficient to support a claim that its Protected Information constitutes a trade secret. As to these claims the Court's determination above - that SJVC has failed to plausibly allege the existence of a trade secret - is dispositive. Because SJVC has failed to allege facts sufficient to support a plausible claim that its Protected Information constitutes a trade secret, SJVC cannot state a claim for either theft or misappropriation of trade secrets. As such, the Streamline Motion is due to be granted to the extent that the Counts IV and V are due to be dismissed for failure to state a claim.

For the foregoing reasons, the StreamlineMD Defendants' Motion to Dismiss Counts I and II is denied as SJVC has sufficiently pled loss as defined by the CFAA. However, the StreamlineMD Motion is due to be granted to the extent that Counts III, IV and V are all due to be dismissed for failure to state a claim upon which relief can be granted. Further, the CVDJBA Motion is due to be granted, and the claim against it in Count IV is dismissed for lack of personal jurisdiction over CVDJBA.

Accordingly, it is hereby **ORDERED**:

1) Defendants' Motion to Dismiss the Second Amended Complaint (Doc. 41), filed on the behalf of StreamlineMD, LLC, Sean M. Mullen, and Harry G. Curley is **GRANTED in part** and **DENIED in part**.

   a. The Motion is **GRANTED**, to the extent that Counts III, IV and V of the Second Amended Complaint are dismissed.

   b. The Motion is **DENIED** as to Counts I and II of the Second Amended Complaint.

2)  Defendants StreamlineMD, LLC, Sean M. Mullen, and Harry G. Curley are directed to respond to the Second Amended Complaint in accordance with the Federal Rules of Civil Procedure.

3)  Defendant CVDJBA, LLC's Motion to Dismiss for Lack of Personal Jurisdiction and Memorandum of Legal Authority (Doc. 42) is **GRANTED**, and the Clerk of the Court is directed to terminate this Defendant from the Court docket.

**DONE AND ORDERED** in Jacksonville, Florida this 28th day of September, 2018.

MARCIA MORALES HOWARD
United States District Judge

lc26
Copies to:
Counsel of Record